## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR A WARRANT TO OBTAIN LOCATION DATA FOR THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER: 52-687-166-7435 (TARGET DEVICE). | Case No. 2:25mj42-DAO<br><br>**Filed Under Seal** |

AFFIDAVIT IN SUPPORT OF APPLICATIONS

I, Jordan Pisano, being duly sworn, depose and state that:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the tracking of location data for the cellular telephone assigned call number 52-687-166-7435 (TARGET DEVICE) (described more fully herein and in attachment A).

2.      I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and have been since April, 2022.  I am currently assigned to Task Force Enforcement Group 3 in the DEA Salt Lake City District Office (SLCDO). I have prior law enforcement experience where I worked as a uniform officer with the United States Capitol Police from 2019-2021.  I continue to enhance my knowledge of law enforcement principles and practices through training. I have attended multiple drug interdiction trainings, which have focused on identifying behavior indicative of drug trafficking and distribution. I have conducted and assisted with numerous investigations relating to the possession and distribution of illegal narcotics (both State and Federal) during my career.

3.      During the course of my employment as a DEA Special Agent, I have participated in drug investigations which involved the use of Title-III interceptions, undercover agents, confidential informants, cooperating witnesses, physical surveillance, consensual recordings, drug evidence purchases, toll record analysis, and subject interviews. Through such investigations and training, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise illegal drugs and the dealings associated with such activities. I have participated in serving search warrants and surveillance operations. I have also participated in investigating drug operations involving large amounts of narcotics that are associated with violent drug cartels. I am familiar with the ways in which narcotic traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of mobile telephones, and their use of code words to conduct transactions.

4.      Based on my training and professional observations in the course of previous investigations into drug trafficking organizations, I am aware that drug traffickers commonly use cellular and other telephones in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and other telephones in an effort to thwart law enforcement's use of electronic and wire surveillance.  I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business, in an effort to further prevent detection.  Furthermore, I have observed that people engaged in drug trafficking utilize oral communications (voice), SMS messaging (text messages), as well as MMS messaging (photo messages) and "smart phones" with features such as text messaging, encrypted text messaging such as Research In Motion (RIM)/Blackberry® PIN to PIN texting/messaging, email, and various

"instant messaging" applications, such as WhatsApp Messenger, in order to facilitate their illegal activities.

5.      The facts set forth in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is merely intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 among others have been committed, are being committed, and will be committed by the user of the **TARGET DEVICE** and other criminal associates. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and the identification of individuals who are engaged in the commission of these offenses. The following information is provided in support of this affidavit, but it is not an all-inclusive summary of this investigation. Additionally, the term "agents" is generally used throughout this affidavit as a reference to Federal, State, and Local law enforcement personnel involved with this investigation.

<u>PURPOSE OF THE AFFIDAVIT</u>

7.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703 (c)(1)(A) for information about the location of the cellular telephone assigned call number; **52-687-166-7435 ("TARGET DEVICE")**, whose service provider is AT&T, a wireless telephone service provider that is headquartered at 208 S. Akard Street Dallas, Texas 75202 Way. The **TARGET DEVICE** does not have a listed subscriber. The **TARGET DEVICE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

<u>FACTS ESTABLISHING PROBABLE CAUSE</u>

8.      The Drug Enforcement Administration (DEA) Metro Narcotics Task Force (MNTF) have been investigating a Sinaloa-based Drug Trafficking Organization ("DTO") since the early 2024. In December 2024, Agents conducted a traffic stop on a known bulk fentanyl redistributor operating around the Salt Lake Valley.  During the traffic stop, Agents seized approximately 886.2 grams of fentanyl pills, U.S. Currency and two cellphones utilized by the Utah redistributor. Agents subsequently served a search and seizure warrant on the residence of the local Utah redistributor and seized approximately 1,703.4 grams of additional fentanyl pills from inside his bedroom.

9.      On December 17, 2024, Agents acquired a court authorized search warrant for the forensic download of the two cellphones utilized by the Utah redistributor. During the forensic download, Agents observed a Mexico telephone number, 52-687-166-7435 (**TARGET DEVICE**), which was communicating directly with the local Utah redistributor. The **TARGET DEVICE** appeared to be directing the local Utah redistributor where to meet other bulk narcotic redistributors within the Salt Lake Valley. Through my training and experience, it is common for Mexico based Sources of Supply (SOS) to direct local bulk redistributors on the whereabouts of narcotic transactions.

10.      In January 2025, Agents utilized a Confidential Source (CS) to contact the **TARGET DEVICE** and inquire about purchasing narcotics. The user of **TARGET DEVICE** agreed with the CS to sell approximately one pound of methamphetamine to the CS in Utah. Agents acquired screen recordings of the conversations with the CS and the **TARGE DEVICE** pertaining to the **TARGET DEVICE** agreeing to sell the CS one pound of methamphetamine. The CS has been proven trustworthy and reliable. The CS has been a DEA informant since 2024 and is currently cooperating

with law enforcement for monetary compensation. All information provided by the CS has been corroborated with Agents and proven to be accurate.

## APPLICABLE CELLULAR TELEPHONE TECHNOLOGY

11.    I know that mobile phone providers have technical capabilities that allow them to collect and generate information about the locations of the mobile phones to which they provide service.  Some of this information includes but is not limited to: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) Call Detail Records (CDRs).

12.    In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13.     Based on my training and experience, I know that **AT&T** can collect E-911 Phase II data about the location of the TARGET DEVICE, including by initiating a signal to determine the location of the TARGET DEVICE on **AT&T** network or with such other reference points as may be reasonably available.

14.     Based on my training and experience, I know that **AT&T** can collect cell-site data about the TARGET DEVICE.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

15.     Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected.  These towers are often a half- mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

16.     Based on my training and experience, I know that **AT&T** can collect cell-site data about Target Telephone 1. I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  CDRs are a type

of these records, and they contain data regarding telecommunication transactions without providing the content of that transaction.  In part, the data contained in these CDRs includes cell site information utilized during the transaction.

17.    Based on my training and experience, I know that telephone companies, like AT&T also collects data about the speed with which signals travel between cellular telephones and cellular towers ("per call measurement data," or "PCMD"). For each cellular telephone accessing its network, providers such as T-Mobile use PCMD and other data to calculate and record the estimated location of that cellular telephone.  T-Mobile refers to the resulting location information as Timing Advanced Information, and/or Timing Advance Report Date ("True Call").  Provider AT&T refers to this information as NELOS (Network Event Location System) and Provider Verizon Wireless refers to this information as RTT (Round-Trip Timing).

18.    Based on my training and experience, I know that telephone companies collect Radio Signal Strength Indicators (RSSI) data.  RSSI is a measurement of how well a device can hear, detect and receive signals from any wireless access point or Wi-Fi router.

19.    Based on my training and experience, I know that telephone companies also collect Media Access Control (MAC) addresses.  A MAC address is a unique identifier assigned to a network interface that allows communication on a physical network segment.

20.    Finally, I know that telephone companies collect Internet Protocol (IP) address, email address, email logs (without content such as the body of the email or subject lines), website address, servers, usernames, Wi-Fi hotspot locations, Wi-Fi ID history, and IP history location.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify location information.

HISTORICAL AND PROSPECTIVE LOCATION WARRANTS: AUTHORIZATION REQUEST

21.     Based on the information set forth herein, I believe there is probable cause to believe that the user of the **TARGET DEVICE** is a drug distributor, who work with others to commit the Target Offenses.  I also believe that probable cause exists to believe the user of the **TARGET DEVICE** uses the **TARGET DEVICE** in furtherance of his drug dealing.  I request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.

22.     I also request that the Court direct **AT&T** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachments B-1, B-2 unobtrusively and with a minimum of interference with **AT&T** services, including by initiating a signal to determine the location of Target Telephone 1 on **AT&T** network, and at such intervals and times as directed by the government.  The government will compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.

23.     I further request that the Court direct **AT&T** to disclose to the government any information described in Section 1 of Attachments B-1 that is within its possession, custody, or control.  I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order **AT&T** not to notify any person (including the  subscriber or customer to whom the materials relates) of the existence of these applications, the warrants, or the execution of these warrants, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b)  **AT&T** may disclose this Order to an attorney for **AT&T** for the purpose of receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the

investigation. There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation including by giving targets an opportunity to destroy evidence, change patterns of behavior, intimidate potential witnesses, or flee from prosecution. See 18 U.S.C. § 2705(b).

24.    I further request that the Court authorize execution of the precision location warrant (Attachments B-2) at any time of day or night, owing to the potential need to locate Target Telephone 1 outside of daytime hours. Because the historical cell-site warrant (Attachments B-1) will be served on **AT&T**, who will then compile the requested records at a time convenient to **AT&T**, reasonable cause exists to permit the extraction of those requested warrants at any time in the day or night as well.

25.    I further request that the Court order that all papers in support of these applications, including the affidavit and search warrants, be sealed until further order of the Court, except that the government may provide the search warrant to **AT&T**. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*/s/ Jordan Pisano*

Jordan Pisano
DEA Special Agent

Subscribed and sworn to before me on January 17, 2025

_____
HON. DAPHNE A. OBERG
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

Information about the location of the mobile phone assigned phone number **52-687-166-7435**, (hereinafter, "TARGET DEVICE"), whose service provider is **AT&T** a company that accepts process at 208 S. Akard Street, Dallas, Texas 75202.

ATTACHMENT B-1

<u>Information to be Disclosed by Service Provider</u>

To the extent that the information described in Attachment A is within the possession, custody, or control of AT&T or the current service provider of the Target Device (hereinafter Service Provider), including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), The Service Provider is required to disclose to the government the following information pertaining to Target Device listed in Attachment A **for the time period of 14 days prior to the date of signing and through the date of this Order:**

1.     The following information about the customers or subscribers of Target Device:

   a.   Names (including subscriber names, user names, and screen names);

   b.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   c.   Local and long distance telephone connection records;

   d.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   e.   Length of service (including start date) and types of service utilized;

   f.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   g.   Other subscriber numbers or identities (All Internet Protocol (IP) address, email address, email logs (without content such as the body of the email or subject lines), website address, servers, usernames, WiFi hotspot locations, Wi-Fi ID history, and IP history location, including user identifying information and communications to and from Target Telephone 1; and,

   h.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Device, including:

a. The date and time of the communication, the method of the communication, and the source and destination of the communication;

b. Call detail records to include numbers dialed, incoming numbers, call durations, signaling and communications processing information, geographic locations of towers and sectors activated, sent and received by Target Telephone 1, for any form of communication it is capable of including: voice, VoIP, VoLTE, text, SMS, MMS, internet, mobile-to- mobile, any push to talk feature, non-billed calls, uncharged call detail, airtime usage data, Automated Message Accounting records and data bases, calls-to-destination data and packet data, as available without communications content and excluding post-cut-through dialed digits);

c. Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent;

d. Cell site data, including any data reflecting: the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from Target Device; the approximate range of Target Telephone 1 from the cell towers during the communication (including per-call measurement data "PCMD", round-trip time "RTT" data, Historical Mobile Locators "NELOS", Timing Advanced Information, and Timing Advance Report Date ("True Call").

<u>Information to be Seized by the Government</u>

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 846 (conspiracy to commit narcotics trafficking offenses), 21 U.S.C. § 841(a)(1) (distribution of controlled substances) and 21 U.S.C. § 843 (use of communication facility in commission of crime) through the date of this Order (the "Target Offenses").

**This warrant does not authorize the collection of any content of any communication**

ATTACHMENT B-2

All information about the location of Target Device described in Attachment A for a period of **thirty days**, during all times of day and night, including:

1.  Precise location information including:

    a.  E-911 Phase II data;

    b.  GPS data;

    c.  Latitude-longitude data;

    d.  Cell site data, including any data reflecting: the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from Target Telephone 1; the approximate range of Target Telephone 1 from the cell towers during the communication (including per-call measurement data "PCMD", round-trip time "RTT" data, Historical Mobile Locators "NELOS", Timing Advanced Information, and Timing Advance Report Date "True Call");

2.  Call Detail Records "CDR's" including:
    Cellular sites and associated street address to include numbers dialed, incoming numbers, call durations, signaling and communications processing information, geographic locations of towers and sectors activated, sent and received by Target Telephone 1 for any form of communication it is capable of including: voice, VoIP, VoLTE, text, SMS, MMS, internet, mobile-to-mobile, any push to talk feature, non-billed calls, uncharged call detail, airtime usage data, Automated  Message Accounting records and data bases, calls-to-destination data and packet data, as available without communications content and excluding post-cut-through dialed digits;

3.  Radio Signal Strength Indicators (RSSI) for the period of this Warrant, timing advance and other pertinent information delivered in real time with regard to neighboring towers as feasible;

4.  The MAC address to include Wi-Fi MAC address and/or the access point(s) to which Target Telephone connects to the internet via wireless technology that allows computers and other devices to communicate over a wireless signal (commonly referred to as Wi-Fi), and packet data; and

5.  All Internet Protocol (IP) address, email address, email logs (without content such as the body of the email or subject lines), website address, servers, usernames, Wi-Fi hotspot locations, Wi-Fi ID history, and IP history location, including user identifying information and communications to and from Target Telephone;

6.  This warrant does not authorize the collection of any content of any communications.

7.  The Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information about the location of Target Device unobtrusively and with a minimum of interference with service provider services, including by initiating a signal to determine the location of Target Device on the service provider's network, and at such intervals and times directed by the government.

8.  The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance.

9.  This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of Information about the location of Target Device.  *See* 18 U.S.C. § 3103a(b)(2)

10. The service provider shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within **30 days** of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b).  *See* 18 U.S.C.§ 2705(b).

11. The service provider may disclose this Order to an attorney for the service provider for the purpose of receiving legal advice.